UNITED STATES, Appellee

v.

Derrick M. WILLIAMS, Staff Sergeant
U.S. Air Force, Appellant

No. 08-0339

Crim. App. No. 36679

United States Court of Appeals for the Armed Forces

Argued October 13, 2009

Decided January 14, 2010

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and BAKER, J., joined.  STUCKY, J., filed a
separate opinion concurring in part and dissenting in part, in
which RYAN, J., joined.

Counsel


For Appellant:  Captain Jennifer J. Raab (argued); Major Shannon
A. Bennett and Captain Tiffany M. Wagner (on brief).

For Appellee:  Captain G. Matthew Osborn (argued); Colonel
Douglas P. Cordova, Lieutenant Colonel Jeremy S. Weber, and
Gerald R. Bruce, Esq. (on brief); Major Steven R. Kaufman.

Military Judge:  J. L. Anderson


**This opinion is subject to revision before final publication**.

United States v. Williams, No. 08-0339/AF

Judge ERDMANN delivered the opinion of the court.

Staff Sergeant Derrick M. Williams was found guilty of numerous charges by a military judge sitting as a general court-martial.[1] He was sentenced to eighteen years of confinement, a dishonorable discharge, reduction to E-1, and forfeiture of all pay and allowances. The convening authority approved the sentence and the United States Air Force Court of Criminal Appeals affirmed the findings and sentence. United States v. Williams (Williams I), No. ACM 36679, 2007 CCA LEXIS 567, 2007 WL 44612041 (A.F. Ct. Crim. App. Dec. 19, 2007). On August 7, 2008, this Court set aside the decision of the Court of Criminal Appeals and remanded the case to the lower court for reconsideration in light of United States v. Adcock, 65 M.J. 18 (C.A.A.F. 2007). United States v. Williams (Williams II), 67 M.J. 19 (C.A.A.F. 2008). Upon reconsideration, the Court of Criminal Appeals found that the military judge did not abuse his discretion when he did not award additional sentencing credit for a violation of Dep't of the Air Force, Instr. 31-205, The Air Force Corrections System (Apr. 7, 2004) [hereinafter AFI 31-205], and again affirmed the findings and the sentence. United

_____

[1] Williams was found guilty pursuant to his pleas of assault consummated by a battery, assault with a loaded firearm, assault upon a law enforcement officer, unlawful entry, kidnapping, communicating a threat, desertion, fleeing apprehension, escape from confinement, reckless operation of a vehicle, and wrongful appropriation of a vehicle. He was found guilty, contrary to

2

United States v. Williams, No. 08-0339/AF

States v. Williams (Williams III), No. ACM 36679 (f rev) (A.F. Ct. Crim. App. Oct. 30, 2008).

   Confinement in violation of service regulations does not create a per se right to sentencing credit under the Uniform Code of Military Justice (UCMJ).  Adcock, 65 M.J. at 23 (citing United States v. King, 61 M.J. 225, 228 (C.A.A.F. 2005)). However, under Rule for Courts-Martial (R.C.M.) 305(k), a servicemember may identify abuses of discretion by pretrial confinement authorities, including violations of applicable service regulations, and on that basis request confinement credit.  Adcock, 65 M.J. at 24.  We granted review in this case to determine whether the military judge erred in not awarding additional confinement credit under R.C.M. 305(k) after having found that the confinement officials had violated a provision of AFI 31-205.  We also granted review to determine whether Williams was entitled to additional confinement credit under Article 13, UCMJ, 10 U.S.C. § 813 (2000), due to the conditions of his confinement.[2]

_____

his pleas, of assault consummated by a battery, kidnapping, communicating a threat, and assault with a loaded firearm.

[2] We granted review of the following issues:

    I.  WHETHER, HAVING FOUND KNOWING VIOLATIONS OF AFI 31-205, THE MILITARY JUDGE ERRED IN NOT DETERMINING THAT THE VIOLATION INVOLVED AN ABUSE OF DISCRETION WARRANTING CREDIT UNDER RCM 305(k).

United States v. Williams, No. 08-0339/AF

We find that the military judge abused his discretion in failing to award additional confinement credit under R.C.M. 305(k) for the period June 1, 2004 through August 25, 2004 and that additional confinement credit for that period is warranted, but that no additional confinement credit is warranted under Article 13, UCMJ.

## Background

On March 24, 2004, Dr. Leckie, an Air Force psychologist, conducted a command-directed mental health evaluation of Williams. Dr. Leckie concluded that Williams "is at low (but not non-existent) risk for suicide and/or violence." In late March and early April, Williams committed a number of serious offenses which resulted in his apprehension and his initial pretrial confinement at the Kirtland Air Force Base Confinement Facility. Upon his entry into the confinement facility, Williams was placed in a maximum custody status and was placed on "suicide watch." It is standard practice at the confinement facility to place all pretrial detainees on an initial twenty-four-hour "suicide watch" to monitor their behavior. Williams

---

II. WHETHER THE CONDITIONS OF APPELLANT'S PRETIRAL CONFINEMENT IN SUICIDE WATCH, WHICH INCLUDED, INTER ALIA, DENIAL OF BOOKS, A RADIO, AND/OR A CD PLAYER, AND 24-HOUR-A-DAY LIGHTING, WERE SO EXCESSIVE THAT THEY CONSTITUTE A PUNISHMENT IN VIOLATION OF ARTICLE 13, UCMJ, AND THUS, APPELLANT IS ENTITLED TO ADDITIONAL SENTENCE CREDIT.

United States v. Williams, 68 M.J. 78 (C.A.A.F. 2009).

4

was removed from "suicide watch" after this initial twenty-four-hour period, although he remained in a maximum custody status for fifteen days before being released into the general population of the confinement facility.

On May 29, 2004, Williams escaped from pretrial confinement.  He was captured on May 30, 2004, and was returned to pretrial confinement at the Kirtland Confinement Facility. He was placed in a maximum security status and confined in a "suicide watch" cell, which was lighted and monitored by camera twenty-four hours a day.  He was also required to wear a special suicide gown.[3]

On May 31, 2004, Williams was once again evaluated by Dr. Leckie.  Security Forces personnel had informed Dr. Leckie of reports that Williams had made suicidal statements.  Williams declined to answer some of Dr. Leckie's questions, stating that he first wanted to speak to his lawyer.  During the interview Williams was generally uncooperative and Dr. Leckie concluded that no follow-up was necessary at that time.

On June 10, 2004, after consulting with other doctors, Dr. Leckie prepared a memorandum to the confinement officials in which he stated:  "Williams is at high, long-term risk for committing suicidal and homicidal behaviors," "[he] is not

---

[3] A suicide gown is a sleeveless cloth garment with velcro strap fasteners.

5

reliable with respect to cooperating with mental health check-ins," "[he] should remain under the provisions of your suicidal protocol, segregated from other prisoners (since he may attempt to harm them)." Dr. Leckie concluded that "[b]ecause he is at high risk for violence and because he will remain at high risk for violence and suicide for an indefinite, long period of time, meticulous scrutiny should be given to his long-term care arrangements." However, Dr. Leckie did request that confinement officials provide Williams "access to a variety of books and a radio or cd player," noting that "[t]hese humane interventions will help him pass his time productively and help him manage his stress."

Williams met with Dr. Leckie on July 9, 2004, and was again uncooperative. He also met twice with another mental health provider, but did not receive therapy during those visits. During his confinement on "suicide watch," Williams was visited every two or three days by medical personnel, primarily nurse practitioners and physician assistants. He was not regularly seen by mental health providers and no entries as to the appropriateness of his "suicide watch" status were made in his medical files or his confinement inspection records during this period.

In a memorandum to confinement officials dated August 26, 2004, Dr. Leckie recommended that Williams be removed from

"formal suicide watch" status. Confinement officials, however, did not alter Williams's placement and he remained under the restrictive conditions of "suicide watch" for an additional 188 days, until the end of his trial on March 2, 2005. At some point during the period of his confinement Williams was allowed access to a radio and a television and he was allowed to have books. For much of his confinement Williams was required to wear a suicide gown and the cell had twenty-four-hour lighting.

At trial Williams moved for appropriate relief for illegal pretrial punishment, citing Article 13, UCMJ, and R.C.M. 305(k). Among other issues, the defense argued that the Government had failed to follow AFI 31-205, para. 8.10, which requires medical authorities to review the appropriateness of continued "suicide watch" at a minimum of every twenty-four hours.[4] Following a

---

[4] AFI 31-205, para. 8.10, provides:

> Suicide Watch. Confinement officers determine when it is necessary to place detainees/inmates on suicide watch to prevent injury, maintain health, or discipline standards. The confinement officer develops procedures to ensure the safety of suicidal inmates. Detainees/inmates are segregated to protect themselves against self harm and a medical officer will evaluate the individual and make a determination regarding the appropriateness of continued segregation as soon as possible and within 24-hours of the initiation of segregation. <u>Additionally, a medical authority will review the appropriateness of continued suicide watch at a minimum every 24-hours after the initiation of the segregation to evaluate their health and sanitary conditions</u>.

Emphasis added.

hearing on the motion, the military judge found that the Government's failure to comply with AFI 31-205 after August 24,[5] 2004, "resulted in the accused being subjected to more onerous conditions that were not related to a legitimate governmental objective."  The military judge awarded Williams one additional day of confinement credit for each day from August 26, 2004 until the end of his trial on March 2, 2005, which amounted to 188 days of credit.

In its initial review of the case the Court of Criminal Appeals affirmed the conviction.  Williams I, 2007 CCA LEXIS 567, at *15, 2007 WL 4461204, at *5.  Following our remand of the case, the Court of Criminal Appeals once again affirmed and held:

> [W]e agree with the military judge's conclusion that the appellant was illegally punished between 26 August 2004 and the date of trial.  We also agree that 188 days of additional credit was appropriate for the Article 13, UCMJ, violation and decline to award additional credit as requested by the appellant.

Williams III, No. ACM 36679 (f rev), slip op. at 6.

The basis for the military judge's award of confinement credit was Article 13, UCMJ:

> [T]his Court concludes that the government's failure to comply with Air Force instructions on "suicide watch" after 24 August 2004 resulted in the accused being subjected to more onerous conditions that [sic] were not related to a legitimate governmental objective. . . .  Therefore, the accused will be given

---

[5] See infra note 6.

an additional 188 days credit for the violation of Article 13.[6]

In reviewing and affirming the military judge's ruling, the Court of Criminal Appeals came to the same conclusion:

> Based on the military judge's findings of fact as supplemented by our own independent review of the record, and after conducting our own de novo review of whether the appellant is entitled to additional credit under Article 13, UCMJ, we agree with the military judge's conclusion that the appellant was illegally punished between 26 August 2004 and the date of trial. We also agree that 188 days of additional credit was appropriate for the Article 13, UCMJ, violation and decline to award additional credit as requested by the appellant.

Williams III, No. ACM 36679 (f rev), slip op. at 6.

## Discussion

Williams argues that while the military judge was correct when he found that confinement officials had violated the provision of AFI 31-205, he abused his discretion under R.C.M. 305(k) when he did not award confinement credit for the entire period of his confinement rather than just the final 188 days. He also argues that independent of his R.C.M. 305(k) claim, he is entitled to additional credit for the conditions of his confinement under Article 13, UCMJ.

---

[6] The military judge's ruling references August 24, 2004, although Dr. Leckie did not recommend that Williams be removed from formal suicide watch until August 26, 2004. The Court of Criminal Appeals recognized August 26, 2004 as the appropriate date and that date is also consistent with the military judge's calculation of 188 days of confinement credit.

The Government argues initially that Williams waived the issue of additional sentencing credit under R.C.M. 305(k). They argue that although Williams included a reference to R.C.M. 305(k) in his written motion at trial, his brief and argument focused solely on Article 13, UCMJ, violations. In his Motion for Appropriate Relief for Illegal Pretrial Punishment, Williams cited R.C.M. 305(k) as a basis for relief as follows:

> 12. RCM 305(k) states in part "the military judge may order additional credit for each day of pretrial confinement that involves an abuse of discretion or unusually harsh circumstances." This credit is to be applied in addition to any other credit the accused may be entitled as a result of pretrial confinement served.

With this inclusion, we find that Williams sufficiently asserted the possibility for relief under R.C.M. 305(k).

In response to the substance of Williams's R.C.M. 305(k) argument, the Government asserts that he has failed to show how the violation of AFI 31-205, para. 8.10, was one that was "clearly intended to safeguard the accused servicemembers' rights to treatment consistent with the presumption of innocence." Adcock, 65 M.J. at 25. The Government argues that, in contrast to Adcock, the intent of the regulatory provision at issue in this case was to evaluate Williams's health and sanitary conditions for medical purposes, which had no bearing on Williams's status as a pretrial detainee or his presumption of innocence.

United States v. Williams, No. 08-0339/AF

This Court defers to a military judge's findings of fact unless they are clearly erroneous. United States v. Mosby, 56 M.J. 309, 310 (C.A.A.F. 2002). The underlying facts are not in dispute, nor is the conclusion that the requirement of para. 8.10, AFI 31-205, was violated.[7] We review de novo the legal question as to whether the established facts and the violation of AFI 31-205 entitled Williams to additional confinement credit. Adcock, 65 M.J. at 21-22.

R.C.M. 305(k)

In Adcock we recognized that R.C.M. 305(k) provides an independent basis for the award of additional confinement credit where there has been a violation of service regulations "when those regulations reflect long-standing concern for the prevention of pretrial punishment and the protection of servicemembers' rights." Adcock, 65 M.J. at 25. There we were presented with a situation where a pretrial detainee had been placed in a civilian facility where the provisions of AFI 31-205 pertaining to the treatment of pretrial detainees were not followed, a fact known to Air Force confinement officials. Id. Under those circumstances, we held that "[a]dministrative relief under R.C.M. 305(k) is appropriate where, as here, confinement officials have knowingly and deliberately violated provisions of

---

[7] There is also no challenge in this case as to the decision to initially place Williams in a "suicide watch" status.

11

service regulations designed to protect the rights of presumptively innocent servicemembers." Id. Here we are presented with a violation of a different provision of AFI 31-205, which was designed to ensure that the inmates or pretrial confinees who are placed on "suicide watch" status will have the appropriateness of that status reviewed at least every twenty-four hours by a medical officer to determine the appropriateness of the continued segregation.

We have previously held that confinement in violation of service regulations does not create a per se right to sentencing credit under the UCMJ, noting that the rule reflects the long-standing principle that not all violations of law result in individually enforceable remedies. Adcock, 65 M.J. at 23 (citations omitted). Our holding today does not deviate from that principle. Once again, however, we emphasize that "'[i]t is well-settled that a government agency must abide by its own rules and regulations where the underlying purpose of such regulations is the protection of personal liberties or interests.'" United States v. Dillard, 8 M.J. 213, 213 (C.M.A. 1980) (quoting United States v. Russo, 1 M.J. 134, 135 (C.M.A. 1975)) (citations omitted).

The military judge awarded confinement credit under Article 13, UCMJ, for the period from August 26, 2004 through the end of the trial based on a violation of AFI 31-205. Had the military

12

United States v. Williams, No. 08-0339/AF

judge the benefit of Adcock at the time of his ruling, an alternative basis for confinement credit would have been R.C.M. 305(k).[8]  While R.C.M. 305(k) could have provided an alternative basis for relief, the factual basis for credit under either Article 13, UCMJ, or R.C.M. 305(k) under the facts of this case was the same conduct on the part of the confinement officials. We therefore hold that the military judge did not abuse his discretion in awarding one-for-one confinement credit for the period August 26, 2004 through the date of trial under Article 13, UCMJ, and note that the award could have been based on R.C.M. 305(k).

As noted, Williams urges that he is entitled to R.C.M. 305(k) confinement credit for the initial period of his pretrial confinement through August 25, 2004, since the confinement officials were in violation of AFI 31-205 for the entire period of his pretrial confinement.  Once confinement officials place a confinee on "suicide watch," AFI 31-205, para. 8.10, requires that status to be reviewed every twenty-four hours by a medical officer to determine the appropriateness of the continued segregation.[9]  This provision can only be designed to protect the

---

[8] In Adcock we held that "under R.C.M. 305(k), a servicemember may identify abuses of discretion by pretrial confinement authorities, including violations of applicable service regulations, and on that basis request additional confinement credit."  65 M.J. at 24.

[9] See supra note 4.

personal liberties and interests of individuals who have been placed on "suicide watch" status.  The daily review of the status ensures that individuals placed on "suicide watch" will be removed from the additional restrictive conditions as soon as medically appropriate.

R.C.M. 305(k) provides in part:

The military judge may order additional credit for each day of pretrial confinement that involves an abuse of discretion or unusually harsh circumstances. This credit is to be applied in addition to any other credit the accused may be entitled as a result of pretrial confinement served.

In this case, the failure of the confinement officials to abide by the requirements of AFI 31-205 from May 31, 2004 until August 26, 2004, constituted an abuse of discretion that adversely impacted Williams's personal liberty or interests. Accordingly, Williams is entitled to an additional eighty-six days (one day per day for the period of confinement from June 1, 2004 through August 25, 2004) confinement credit under R.C.M. 305(k).

Article 13, UCMJ

We now consider Williams's claim that under Article 13, UCMJ, he is entitled to additional sentencing credit beyond that which the military judge ordered while he was on "suicide watch" status.  Williams argues that he was denied books, denied a radio and CD player, was subjected to twenty-four-hour lighting,

14

and was required to wear a suicide gown.[10]  Williams asserts that this relief is independent from his relief under R.C.M. 305(k). Initially, we note that all of these conditions were directly related to Williams's "suicide watch" status and were considered by the military judge in his decision on Williams's motion for appropriate relief at trial.

Article 13, UCMJ,[11] prohibits the imposition of punishment prior to trial.  Alleged violations of Article 13, UCMJ, require scrutinizing the Government's "purpose or intent to punish, determined by examining the intent of detention officials or by examining the purposes served by the restriction or condition, and whether such purposes are 'reasonably related to a legitimate governmental objective.'"  King, 61 M.J. at 227 (citations omitted).

As to the complained of conditions of confinement, the military judge found that the defense had failed (in their burden) to show an intent to punish.  He subsequently considered the conditions of Williams's confinement while on "suicide watch" and determined that they served a legitimate, nonpunitive

---

[10] It is not disputed that several of these conditions were relaxed during the course of Williams's confinement.

[11] "No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances require to insure his presence . . . ."  Article 13, UCMJ.

governmental objective before August 26, 2004. We see no reason to disturb that conclusion.

Turning to the period from August 26, 2004 through the date of trial, the military judge has already awarded day-for-day confinement credit under Article 13, UCMJ, for violation of AFI 31-205 relating to Williams's "suicide watch" status. As all of the complained of conditions were related to that status, we find under the circumstances that the military judge's award also adequately remedied any claim of redress under the provisions of R.C.M. 305(k) by Williams related to that status for the period from August 26, 2004 until trial.

## Conclusion

We hold that the Court of Criminal Appeals correctly found that the military judge did not err in awarding confinement credit for the period August 26, 2004 through the date of trial under Article 13, UCMJ, and note that the award could alternatively have been based on R.C.M. 305(k). We further hold that the Court of Criminal Appeals erred in concluding that the military judge did not abuse his discretion in failing to award additional sentencing credit for the period June 1, 2004 through August 25, 2004 under R.C.M 305(k). As the issue of additional administrative credit does not affect the findings and sentence as affirmed by the lower court, we need not set aside the

16

decision, but will afford appropriate relief in our decretal paragraph.

## Decision

The findings and sentence as affirmed by the United States Air Force Court of Criminal Appeals are affirmed.  Appellant will be credited with an additional eighty-six days of confinement served.

STUCKY, Judge, with whom RYAN, Judge, joins (concurring in part and dissenting in part):

Despite protestations to the contrary, the majority has, in effect, created an automatic right to Rule for Courts-Martial (R.C.M.) 305(k) credit for even the slightest deviation from regulatory compliance.  I believe this approach is as misguided now as it was in United States v. Adcock, 65 M.J. 18, 26 (C.A.A.F. 2007) (Stucky, J., dissenting).  Therefore, while I concur with the majority's judgment that no additional confinement credit is warranted under Article 13, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 813 (2000), I respectfully dissent from that portion of the judgment that awards Appellant additional confinement credit.

As I noted in Adcock:

> The phrase "abuse of discretion" as used in R.C.M. 305(k) must be read in conjunction with R.C.M. 305(j), which is the only other place this phrase appears in R.C.M. 305.  R.C.M. 305(j) requires that, upon motion of the accused, the military judge must review for an abuse of discretion the seven-day reviewing officer's decision, made pursuant to R.C.M. 305(i)(2), to continue the pretrial confinement of an accused.  It is transparent that the phrase "abuse of discretion" refers to the military judge's review of the seven-day reviewing officer's consideration of all prior decisions by military authorities to place and retain a servicemember in pretrial confinement.  See R.C.M. 305(h)(2); R.C.M. 305(i)(1).  R.C.M. 305(k) thus empowers, but does not require, the military judge to award additional confinement credit for an abuse of discretion in a decision to continue an accused's confinement.

> The phrase "abuse of discretion" in R.C.M. 305(k) does not refer to the conditions of an accused's confinement. R.C.M. 305(k) neither empowers the military judge nor is meant to be used by this Court as a tool to examine and second-guess every decision made by confinement officials as to the place or circumstances of an accused's confinement. Rather, it is the "unusually harsh circumstances" prong of R.C.M. 305(k) that the President used to describe the conditions of pretrial confinement that permit the military judge to award additional confinement under R.C.M. 305(k).

Id. at 27.

Even if the majority's interpretation of R.C.M. 305(k) were correct, its resolution of the issue in this case provides Appellant an unwarranted eighty-three-day windfall. He has already received credit due to his being continued on suicide watch after August 26, 2004, the date Dr. Leckie first suggested that continued formal suicide watch was no longer necessary, while at the same time noting that Appellant remained at "mild to moderate long-term risk for committing suicidal and homicidal behaviors" which were "impossible to specify" further because of his uncooperativeness. The issue here is whether Appellant should be afforded additional credit because he was not evaluated by medical staff on a daily basis.

This is not a case in which the Air Force abandoned a prisoner to languish in his cell without medical support. Appellant conceded that he was "evaluated about every other day by medical personnel." Appellant's voluminous medical records

2

in the record of trial attest to the medical staff's attempts to provide meaningful care to a totally uncooperative prisoner over the entire period he was on suicide watch.  They visited him every second or third day, asked how he felt, checked his vital signs, and noted his condition.  He saw mental health practitioners at least seven times in the eighty-six days at issue.

The majority implies that Dep't of Air Force, Instr. 31-205, The Air Force Corrections System para. 8.10 (Apr. 7, 2004), requires mental health officials to visit Appellant daily and note specifically and daily in the medical or confinement records that suicide watch was still appropriate.  That is simply not the case.  While the regulation may be read to require daily visits either by a medical authority or someone else who then reports his or her findings to the medical authority for review, it does not require daily evaluations by mental health practitioners or daily notations that suicide watch is still appropriate.  In any event, the overall level of medical attention and care surely did not mandate, as the majority holds, that the military judge award Appellant any additional confinement credit for the period he spent on suicide watch up until August 26, 2004.

The majority concludes that para. 8.10 was designed to "ensure[] that individuals placed on 'suicide watch' will be

removed from the additional restrictive conditions as soon as medically appropriate." If that is the purpose of para. 8.10, then even under the majority's interpretation of R.C.M. 305(k), Appellant should only be entitled to three additional days of credit -- the time between the last visit of a medical authority who made no recommendation that the suicide watch should be terminated (August 23, 2004), and August 26, 2004, when Dr. Leckie made such a recommendation.

This case presents an even weaker rationale for judicial oversight than did Adcock. The majority's holding encourages appellants to look for and litigate perceived infractions of confinement regulations, no matter how de minimis they may be. With today's judgment, the concerns I expressed in Adcock have been realized. This Court has now established "itself as the de facto supervisor of substantive conditions of confinement involving members of the armed forces -- a function that we are exceedingly ill suited to perform." 65 M.J. at 29 (Stucky, J., dissenting).