# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

―――――――――――

**No. ACM 39200**

―――――――――――

**UNITED STATES**
*Appellee*

**v.**

**Steven JIMENEZ**
Senior Airman (E-4), U.S. Air Force, *Appellant*

―――――――――――

Appeal from the United States Air Force Trial Judiciary

Decided 20 June 2018

―――――――――――

*Military Judge:* Brendon K. Tukey.

*Approved sentence:* Dishonorable discharge, confinement for 10 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 10 May 2016 by GCM convened at Malmstrom Air Force Base, Montana.

*For Appellant:* Major Patricia Encarnación Miranda, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Mary Ellen Payne, USAF; Major J. Ronald Steelman III, USAF.

Before JOHNSON, MINK, and DENNIS, *Appellate Military Judges*.

Senior Judge JOHNSON delivered the opinion of the court, in which Judge MINK and Judge DENNIS joined.

―――――――――――

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

―――――――――――

JOHNSON, Senior Judge:

A military judge found Appellant guilty, consistent with his pleas and pursuant to a pretrial agreement, of two specifications of willfully disobeying a superior commissioned officer, one specification of wrongfully using marijuana

on divers occasions, one specification of wrongfully distributing marijuana on divers occasions, one specification of larceny of nonmilitary property of a value of less than $500.00 on divers occasions, two specifications of aggravated assault, and nine specifications of assault consummated by battery, in violation of Articles 90, 112a, 121, and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 890, 912a, 921, 928.[1] A general court-martial composed of officer and enlisted members sentenced Appellant to a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The military judge granted Appellant 200 days of confinement credit against his sentence for illegal pretrial punishment. The convening authority approved the adjudged sentence.

Appellant raises seven issues on appeal: (1) whether he is entitled to relief due to a presumptively unreasonable post-trial delay; (2) whether the termination of Appellant's pay during his pretrial confinement constituted illegal pretrial punishment in violation of Article 13, UCMJ, 10 U.S.C. § 813; (3) whether the military judge erred in permitting an expert witness to testify that Appellant demonstrated a pattern of intimate partner violence; (4) whether Appellant's sentence to confinement is inappropriately severe; (5) whether Appellant's trial defense counsel was ineffective for failing to make a specific sentence recommendation;[2] (6) whether Appellant is entitled to additional confinement credit due to the conditions of his pretrial confinement; and (7) whether Appellant is entitled to confinement credit for the conditions of his post-trial confinement.[3] We find no relief is warranted and affirm the findings and sentence.

## I. BACKGROUND

Appellant engaged in a pattern of physical violence against a series of romantic partners. Appellant met Staff Sergeant (SSgt) EP[4] in technical school

---

[1] The military judge's findings with respect to four of the Article 128 specifications involved findings by exceptions and substitutions.

[2] We find trial defense counsel's performance in this respect did not fall measurably below that expected of lawyers, and that absent the "error" there was no reasonable probability of a more favorable result for Appellant. *See United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2009). We further find this issue neither requires further discussion nor warrants relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

[3] Appellant personally asserts issues (4) through (7) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[4] SSgt EP was an Airman First Class or Senior Airman when Appellant committed the offenses against her described below.

in late 2010. They attempted to maintain a long-distance relationship while Appellant was stationed at Malmstrom Air Force Base (AFB), Montana, and SSgt EP was stationed in Florida. In December 2011 or January 2012, Appellant pushed SSgt EP on the chest during an argument in front of her parents' house in Florida, causing SSgt EP to strike her head on the window of her car. On another occasion, during a visit with Appellant's family members in California, Appellant again pushed SSgt EP on the chest hard enough to knock her off her feet.

Between January 2013 and July 2013, Appellant developed an intimate relationship with TL, who like Appellant lived in Great Falls, Montana. In June or July 2013, Appellant became angry at TL as they left a party. When TL drove them home, Appellant grabbed her wrist hard enough to make her cry and refused to let go until after they arrived. Later that evening at Appellant's apartment, he grabbed TL by the hair, pushed her on her chest, and placed his hand on her throat and squeezed her neck lightly, all without her consent. Their relationship ended shortly thereafter.

On 3 November 2013, Appellant visited SSgt EP at her apartment in Florida. During another argument, Appellant held SSgt EP on the floor and choked her by squeezing her neck with both hands. After Appellant let go, SSgt EP attempted to retreat upstairs and Appellant pursued her. SSgt EP sprayed Appellant, and accidentally herself, with pepper spray, left the apartment, and called 911. Civilian police responded, but SSgt EP did not tell them she had been choked, and Appellant was not arrested or charged at the time.

In September 2014, Appellant began a relationship with AH, who also lived in Great Falls. Between May 2014 and January 2015, overlapping his relationship with AH, Appellant used marijuana on multiple occasions with several other Airmen and with AH. In addition, on multiple occasions Appellant provided marijuana to several Airmen who were subsequently administratively discharged from the Air Force for drug abuse.

On 5 January 2015, during an argument in Appellant's apartment, Appellant grabbed AH and pushed or threw her into the bathroom vanity, causing her to fall to the floor. On 23 January 2015, Appellant pushed AH on the shoulder during another argument. On the night of 29–30 January 2015, after yet another argument, AH came to Appellant's apartment to remove her belongings. During the ensuing confrontation Appellant struck AH in the face, grabbed and pushed her, held her on the ground, pushed her face into a sofa, and blew blood and mucus onto her from his nose.

AH reported Appellant's conduct to the Air Force Office of Special Investigations (AFOSI) on 30 January 2015. That same day, Appellant's squadron

section commander, First Lieutenant JT, issued him an order to have no contact with AH. Despite receiving, understanding, and acknowledging the order, Appellant violated the order on an ongoing basis by regularly communicating with AH by telephone, social media, and texts, and by continuing to meet her in person. On 24 March 2015, AH mentioned during an interview with AFOSI that Appellant continued to contact her. As a result, on that day Appellant was issued another order to have no contact with AH, this time from the deputy squadron commander, Major OB. Appellant continued to regularly violate the order.

In April 2015, Appellant was working part-time at a local Walmart. On multiple occasions over several days, when Appellant was working at a checkout register he stole items from Walmart by giving them to customers—mostly other Airmen—without scanning them or by voiding a purchase after initially ringing it up. Walmart employees detected the larcenies by monitoring the unusual number of voided items at Appellant's register and by studying store security videos. When confronted, Appellant admitted to stealing the items. Walmart identified four incidents during which Appellant either failed to scan or voided a total of at least 24 items with a total value over $326.74.

Finally, on 23 May 2015, Appellant and AH got involved in another physical altercation at his apartment. In the course of the incident Appellant punched AH in the ribs, pulled her hair, and choked her. AH subsequently reported the incident to AFOSI and to civilian police. Appellant was arrested by civilian police on 24 May 2015 and held in civilian confinement until 26 May 2015. Upon his release, Appellant was restricted to Malmstrom AFB. After Appellant continued to violate renewed orders not to contact AH, on 9 October 2015 he was placed in military pretrial confinement where he remained until the conclusion of his court-martial on 10 May 2016. Including the three days in civilian confinement, Appellant spent a total of 217 days in pretrial confinement.

## II. DISCUSSION

### A. Post-Trial Delay

#### 1. Additional Background

Appellant's trial concluded on 10 May 2016. The court reporter's workload significantly delayed transcription of the proceedings. In addition, substantial recorded portions of the trial that were given to another court reporter for transcription assistance had to be re-accomplished due to poor quality. The military judge did not authenticate the trial transcript until 1 September 2016. During the assembly of the record of trial, the base legal office realized an appellate

exhibit was missing. This led to the military judge signing a certificate of correction on 25 October 2016 in order to complete the record. Trial defense counsel's memorandum dated 24 October 2016 acknowledging notice of the proposed certificate of correction included a demand for speedy post-trial processing.

The convening authority's staff judge advocate (SJA) signed the original SJA recommendation (SJAR) to the convening authority on 3 November 2016. On 8 November 2016, Appellant's trial defense counsel requested the SJA recuse himself from the post-trial process because the SJA had previously consulted with the trial defense counsel about Appellant's case in the SJA's prior role as the chief of the Trial Defense Division. On 10 November 2016, the SJA did recuse himself. An acting SJA signed a new SJAR on 10 November 2016, which was delivered to Appellant and his counsel. Trial defense counsel submitted clemency matters to the convening authority on 24 November 2016. Errors in an attachment to the SJAR and efforts to serve the SJAR on all of the named victims further delayed the preparation of an addendum to the SJAR and delivery of clemency matters to the convening authority until 16 December 2016. The convening authority took action on 19 December 2016, 223 days after Appellant's trial.

### 2. Law

The United States Court of Appeals for the Armed Forces (CAAF) has recognized that convicted servicemembers have a due process right to a timely review and appeal of court-martial convictions. *Toohey v. United States*, 60 M.J. 100, 101 (C.A.A.F. 2004). In *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006), the CAAF established a presumption of unreasonable delay when the convening authority does not take action within 120 days of completion of trial, when a record of trial is not docketed with the service court within 30 days of the convening authority's action, and when this court does not render a decision within 18 months of the case being docketed. Where there is such a delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), in order to determine if there is a due process violation: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of his right to a timely review; and (4) prejudice to the appellant. *Moreno*, 63 M.J. at 135 (citing *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005); *Toohey*, 60 M.J. at 102). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 136 (citing *Barker*, 407 U.S. at 533). However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

### 3. Analysis

The 223 days that elapsed between the conclusion of Appellant's trial and the convening authority's action exceeded the 120-day standard for a presumptively unreasonable delay the CAAF established in *Moreno*. Therefore, we consider the four *Barker* factors, beginning with the length of the delay itself. In this case, the delay substantially exceeded the *Moreno* standard. The Government concedes this factor weighs in Appellant's favor. We concur.

The Government optimistically contends the second factor, the reasons for the delay, weigh in its favor. We cannot agree. We acknowledge the size of the record, which spanned 12 total days of trial and included 1208 pages of transcript and well over 100 exhibits. We further acknowledge the involvement of multiple victims added to the procedural complexity of the post-trial process. Nevertheless, the record demonstrates that time after time the processing of Appellant's case was substantially delayed by inefficiencies and lack of attention to detail that cannot be attributed to Appellant. While we do not question the good intentions of those involved in the process, delays arising from assignment of other priorities to the court reporter, poor transcription quality, loss of an exhibit, failure to recognize the SJA's conflict of interest, and errors in SJAR attachments are squarely the responsibility of the Government. This factor weighs substantially in favor of Appellant.

The third factor, Appellant's assertion of his right to timely review, weighs somewhat in Appellant's favor. At a minimum, on 24 October 2016 Appellant put the Government on notice that he demanded timely post-trial processing. Although this was already 167 days after his trial ended, it still took 56 more days to reach convening authority action, largely because of avoidable errors by the Government.

In a different case, these factors may have led us to find a violation of Appellant's due process rights under *Moreno*. However, the CAAF has held that "where there is no finding of *Barker* prejudice, we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362. In this case, the prejudice analysis is determinative.

In *Moreno*, the CAAF identified three types of cognizable prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of the appellant's ability to present a defense at a rehearing. 63 M.J. at 138–39. Where, as in this case as described below, an appellant does not prevail on the substantive grounds of his appeal, there is no oppressive incarceration. *Id.* at 139. Similarly, where Appellant's substantive appeal fails, his ability to present a defense at a rehearing is not impaired. *Id.*

at 140. As for anxiety and concern, the CAAF has explained "the appropriate test for the military justice system is to require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* Appellant contends he had such particularized anxiety and concern because his pay ceased once he passed the expiration of his term of service (ETS) while in pretrial confinement, and he asserts he is unable to pursue a civil remedy for that denial in federal court until the appeal of his court-martial is resolved. We find this argument unpersuasive for two reasons. First, as explained below, Appellant's argument that he was subjected to unlawful withholding of pay is contrary to clear controlling precedent from the CAAF interpreting the applicable law. *See United States v. Fischer*, 61 M.J. 415, 421 (C.A.A.F. 2005). Second, Appellant's claim that he cannot pursue another remedy is supported only by his bare assertion; he has failed to demonstrate that he is in fact barred from doing so, or that he is entitled to any remedy in federal court.

Because Appellant fails to demonstrate prejudice, and we find the remaining factors are not so egregious as to impugn the fairness and integrity of the military justice system, we find no violation of Appellant's due process rights under *Moreno*. Recognizing our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we have also considered whether relief for excessive post-trial delay is appropriate in this case even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude that such an exercise of our authority in not appropriate in this case.[5]

## B. Pay Termination

### 1. Additional Background

Appellant entered pretrial confinement on 9 October 2015 and remained there until the end of his trial on 10 May 2016. Appellant's term of service

---

[5] These factors include: (1) how long the delay exceeded the standards set forth in *Moreno*; (2) what reasons, if any, the Government set forth for the delay, and whether there is any evidence of bad faith or gross indifference to the overall post-trial processing of this case; (3) whether there is evidence of harm to the appellant or institutionally caused by the delay; (4) whether the delay has lessened the disciplinary effect of any particular aspect of the sentence, and whether relief is consistent with the dual goals of justice and good order and discipline; (5) whether there is any evidence of institutional neglect concerning timely post-trial processing; and (6) given the passage of time, whether this court can provide meaningful relief in this particular situation.

expired on 4 January 2016. On that date he ceased receiving pay. On 15 January 2016, the SJA for the 341st Missile Wing (341 MW) submitted a request to the Air Force Personnel Center (AFPC) to involuntarily extend Appellant on active duty. AFPC denied the request, explaining that his enlistment could not be extended while he was in pretrial confinement.

Appellant filed a pretrial motion requesting relief for illegal pretrial punishment in violation of Article 13, UCMJ, citing in part the termination of his pay.[6] The Government opposed the motion. After findings but before the sentence was announced, in an oral ruling subsequently supplemented in writing, the military judge carefully considered the facts and the law in light of the CAAF's majority opinion in *Fischer*, 61 M.J. 415, and denied the motion with respect to the termination of pay.

**2. Law**

We review de novo the question of whether an appellant is entitled to credit for a violation of Article 13, UCMJ. *Id.* at 418 (citing *United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F. 2002)). "It is a mixed question of law and fact, and the military judge's findings of fact will not be overturned unless they are clearly erroneous." *Id.* The appellant bears the burden of proof. *Id.*

"Article 13, UCMJ, prohibits two things: (1) the imposition of punishment prior to trial, and (2) conditions of arrest or pretrial confinement that are more rigorous than necessary to ensure the accused's presence for trial." *United States v. King*, 61 M.J. 225, 227 (C.A.A.F. 2005). The first prohibition involves an intent or purpose to punish determined by examining the intent of confinement officials and the purposes of the restrictions or conditions in question. *Id.* (citations omitted). The second prohibition concerns conditions "sufficiently egregious [to] give rise to a permissive inference that an accused is being punished, or conditions . . . so excessive as to constitute punishment." *Id.* at 227–28 (citations omitted).

The Department of Defense Financial Management Regulation (FMR) provides that a military confinee is not entitled to pay and allowances once his term of enlistment expires. *See* Department of Defense FMR, DoD 7000.14-R, Volume 7A, Chapter 1, §§ 010402.F, G (April 2017). If a member in pretrial confinement is subsequently acquitted or if the charges are dismissed, pay and allowances accrue until the member's discharge. *Id.* at § 010402, G.3. In *Fischer*, the CAAF found the provision of the FMR terminating pay upon ETS

---

[6] Appellant also asserted the conditions of his pretrial confinement violated Article 13, UCMJ, an issue addressed separately below.

did not operate as an unlawful punishment imposed before trial in violation of Article 13, UCMJ. *Fischer*, 61 M.J. at 418–22.

### 3. Analysis

Appellant contends the termination of his pay was an illegal pretrial punishment in violation of Article 13, UCMJ.[7] He does not challenge the military judge's finding at trial that the termination of his pay pursuant to the FMR involved no punitive intent, but Appellant asserts it is facially punitive, is arbitrary, and serves no legitimate governmental purpose in its disparate treatment of enlisted pretrial confinees who are subsequently convicted and other servicemembers in a pretrial status. *See Bell v. Wolfish*, 441 U.S. 520, 539 (1979) ("[I]f a restriction or condition [of pretrial detention] is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose . . . is punishment that may not be constitutionally inflicted upon detainees *qua* detainees.") (citation omitted); *Howell v. United States*, 75 M.J. 386, 393 (C.A.A.F. 2016).

Appellant recognizes the CAAF's analysis of the FMR provisions in *Fischer* is contrary to his position, but he attempts to distinguish his case. First, he characterizes the efforts of the 341 MW SJA to extend his enlistment after his ETS expired as an attempt to "remedy the wrong" he suffered. Appellant suggests that because the attempt by one governmental actor (the 341 MW SJA) to relieve him was thwarted by the application of the FMR by another governmental actor (AFPC), the FMR provision operated as a punishment in his case. We are not persuaded. AFPC correctly interpreted and applied governing regulations in Appellant's case as it would in any other; any dialog between the 341 MW SJA and AFPC en route to this result did not transform the regulatory provisions into a punishment.

Next, Appellant contends his case is unlike *Fischer* in that he does not have the option of pursuing the matter of his pay in the United States Court of Federal Claims (USCFC). *See Fischer*, 61 M.J. at 421. Appellant cites several cases for the proposition that, although in general servicemembers separated *prior* to ETS may sue in the USCFC for reinstatement and back pay, servicemembers *past* their ETS are not entitled to reinstatement or to back pay for periods after their ETS. *See Dodson v. United States Gov't, Dep't of Army*, 988 F.2d 1199, 1208 (Fed. Cir. 1993); *Thomas v. United States*, 42 Fed. Cl. 449, 452–53 (1998), *aff'd*, 217 F.3d 854 (Fed. Cir. 1999); *Dougharty v. United States*, 27 Fed. Cl. 436, 439 (1993), *aff'd*, 11 F.3d 1073 (Fed. Cir. 1993). Taken together, these

---

[7] The issue as recited in Appellant's assignment of error also alleges violation of his right to due process, but Appellant's analysis of the issue is limited to Article 13, UCMJ.

cases stand for the sensible proposition that the USCFC cannot direct a military service to reenlist a member, nor will it assume the military service would have reenlisted a member where such a decision is not automatic but is within the discretion of the service. This does not distinguish Appellant's case from *Fischer*; like Appellant, Lance Corporal Fischer ceased receiving pay upon the expiration of his enlistment while he was in pretrial confinement. *Fischer*, 61 M.J. at 416. In fact, Appellant is similarly situated to Lance Corporal Fischer in that, as the CAAF put it, if he "takes issue with the propriety of the underlying decisions as a matter of fiscal law, he must pursue that issue before the [USCFC]." *Id.* at 421.

Finally, Appellant argues *Fischer* may no longer be valid precedent in light of the United States Supreme Court's decision in *Nelson v. Colorado*, 137 S. Ct. 1249 (2017). We are not persuaded. In *Nelson*, the Court found a Colorado statute requiring an exonerated criminal defendant to file suit and prove actual innocence by clear and convincing evidence in order to recover fees, costs, and restitution previously exacted in connection with the overturned convictions violated the Fourteenth Amendment[8] guarantee of due process. *Id.* at 1257–58. Unlike *Nelson*, Appellant and Lance Corporal Fischer were not required to forfeit property as a result of an invalidated determination of guilt, unless and until they bore the burden of proving their actual innocence. Rather, Appellant simply did not receive pay to which he was not entitled. As the CAAF explained in *Fischer*, his entitlement to pay terminated at ETS, and "[t]he Government's policy of retroactively paying persons held past their [ETS] when a charge has not been sustained at trial does not signify an intent to punish the other group." 61 M.J. at 419.

*Fischer* controls, and like the military judge we are not at liberty to substitute our judgment for that of our superior court, even if we were inclined to do so. We hold the termination of Appellant's pay upon his ETS was not an illegal pretrial punishment in violation of Article 13, UCMJ.

## C. Testimony on Pattern of Intimate Partner Violence

### 1. Additional Background

During sentencing proceedings, the Government called Dr. KF as an expert in clinical and forensic psychology. Dr. KF testified generally about the characteristics and effects of intimate partner violence.

The Defense called Dr. MC, its own expert in clinical and forensic psychology. Dr. MC somewhat undermined Dr. KF's testimony by providing further

---

[8] U.S. CONST. amend. XIV.

details and analysis of studies and authorities Dr. KF had cited. On cross-examination, trial counsel elicited, *inter alia*, Dr. MC's agreement that all 11 specifications of assault of which Appellant was convicted were instances of intimate partner violence.

After the cross-examination, the military judge permitted the court members to submit in writing their own questions for Dr. MC. One court member submitted the following question: "Do you believe [Appellant] shows a pattern of interpartner [sic] violence, and what are some of the risks if he is not treated?" Trial defense counsel requested an Article 39(a), UCMJ, hearing outside the presence of the members to discuss the proposed question. Counsel for both parties opposed asking the second part of the question regarding "risks," and the military judge agreed not to ask that portion. Trial counsel contended the first part of the question regarding a "pattern" should be asked. Trial defense counsel objected, initially on the grounds that it was "outside the scope" of Dr. MC's testimony. The military judge then asked Dr. MC, outside the presence of the members, whether he believed Appellant "shows a pattern of intimate-partner violence." Dr. MC responded:

> Well, we certainly see a pattern across victims. So, we do see repeated episodes of this. And we've seen at least more than one incident of strangulation in particular. So I think it would be hard to say that there isn't some sort of a pattern here that you see across victims and situations.

The military judge stated he intended to ask the member's question because it was "fairly enough within the expertise of the doctor" and "in regards to [Mil. R. Evid.] 403, nor do I find that its probative value would be outweighed by the risk of unfair prejudice."

Trial defense counsel then objected because Dr. MC's expertise was not required to answer the question; it was already "abundantly clear" that "there's a pattern here and we all got that." He further contended there was a risk of unfair prejudice in that the testimony would create the impression that Appellant was a "repeat offender." The military judge opined that the proposed question was distinct from the question of whether Appellant was a repeat offender and that there was "no real risk of unfair prejudice." Finally, trial defense counsel suggested that in light of training regarding sexual assault in particular, the term "pattern of violence" carried "certain stigmas and inclinations" in the minds of Air Force members that militated against permitting such testimony. The military judge disagreed and overruled the objection.

When the court members returned, the military judge asked, "do you believe that [Appellant] shows a pattern of intimate partner violence?" Dr. MC answered:

If we define pattern as behaviors that are repeated over various different situations, then I think we would have to say, "Yes." Because we certainly do see certain kinds of behaviors or generally behaviors that are defined – that have been defined as IPV [intimate partner violence] occurring repeatedly, both within relationships and across relationships. So I think that the general answer to that would be yes.

### 2. Law

A military judge's decision to admit or exclude expert testimony is reviewed for an abuse of discretion. *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts was clearly unreasonable." *Id.* (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

Mil. R. Evid. 403 provides a "military judge may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." Where a military judge conducts a proper balancing test under Mil. R. Evid. 403, an appellate court will not overturn the ruling absent a clear abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010) (quoting *United States v. Ruppel*, 49 M.J. 247, 251 (C.A.A.F. 1998)). If the military judge conducts the Mil. R. Evid. 403 balancing test but "does not sufficiently articulate his balancing on the record, his evidentiary ruling will receive less deference." *United States v. Berry*, 61 M.J. 91, 96 (C.A.A.F. 2005).

### 3. Analysis

Appellant contends Dr. MC's testimony that Appellant demonstrated a pattern of intimate partner violence was lent additional weight by Dr. MC's status as an expert and implied Appellant was likely to reoffend in the future. Appellant argues the military judge abused his discretion by permitting this testimony and asks this court to reassess his sentence to confinement and grant meaningful relief. We decline to do so.

We acknowledge the probative value of Dr. MC's answer to the question was modest. In trial defense counsel's words, it was already "abundantly clear" in light of trial counsel's cross-examination of Dr. MC and all other evidence in the case regarding the charged assaults that Appellant demonstrated a pattern of violence toward his intimate partners. However, by the same token, as the military judge recognized, the danger of unfair prejudice, if any, was slight. Trial defense counsel himself agreed the evidence demonstrated a pattern of intimate partner violence. Dr. MC did not testify regarding Appellant's likeli-

hood to reoffend. Dr. MC defined "pattern" for purposes of his answer in a common sense, easily understood way that focused on past events and not as a prediction of future behavior. We are not persuaded his acknowledgement of a past pattern of intimate partner violence amounted to a prediction or suggestion regarding potential recidivism.

Accordingly, we are not persuaded the military judge abused his discretion by concluding the probative value of the court member's question was not substantially outweighed by the danger of unfair prejudice.

**D. Sentence Appropriateness**

**1. Law**

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (citing *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)). Although we have great discretion to determine whether a sentence is appropriate, we have no authority to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

**2. Analysis**

Appellant personally asserts his sentence "is disproportionate to the facts of his case and the victim impact as shown during his court-martial." He refers us to his trial defense counsel's clemency memorandum on his behalf to the convening authority. Therein, among other arguments, trial defense counsel notes that although Appellant faced a maximum term of 38 years in confinement, his convictions for violating no contact orders, using marijuana, distributing marijuana, and committing larceny of "a little over $300" contribute 27.5 years towards that maximum. Trial defense counsel asserted "practical experience" indicated these offenses individually would have "at best" merited nonjudicial punishment and an administrative discharge, and even combined it is a "near certainty" they would not result in a general court-martial. In contrast, he argued, the real focus of the case—the assaults—accounted for less than a third of the maximum available term of confinement. He further contended the assaults themselves, which did not result in lasting injuries, were not "extreme" when considered in the full spectrum of assaults that may be charged under Article 128, UCMJ. For these and other reasons, trial defense counsel requested the convening authority reduce Appellant's term of confinement by

two years or, failing that, approve a bad-conduct discharge in lieu of the adjudged dishonorable discharge. We are not persuaded.

"The military operates under the theory of 'unitary sentencing' which has been part of military law even before the enactment of the Uniform Code of Military Justice." *United States v. Bellacosa*, No. ACM 32266, 1997 CCA LEXIS 92, at *3 (A.F. Ct. Crim. App. 6 Mar. 1997) (unpub. op.) (citing *United States v. Keith*, 4 C.M.R. 34 (1952)). Appellant does not now challenge this general principle. Yet, at trial, the military judge permitted the Defense to attach a document to Appellant's written unsworn statement that set forth the individual maximum punishments corresponding to the offenses of which Appellant had been convicted. Thus, notwithstanding the principle of unitary sentencing, the court members were made aware of how much each individual specification contributed to the 38-year maximum possible term of confinement. Knowing this, the members decided a 10-year term of confinement was appropriate. We cannot say such a sentence is inappropriately severe.

Notwithstanding trial defense counsel's minimizations, we do not lightly dismiss the seriousness of Appellant's offenses. Appellant's criminal misconduct was longstanding and multifaceted. Over a period of years, he engaged in a pattern of physical violence against multiple intimate partners, including choking two of them to the point they feared they would die. He repeatedly distributed marijuana to multiple other Airmen in his home, and he repeatedly used it with them and with a civilian. Moreover, Appellant's misconduct continued and diversified well after he became aware he was under criminal investigation in January 2015. On multiple occasions he stole from his part-time employer, Walmart. He brazenly and continuously violated no contact orders designed, in part, to protect one of his victims, until he was placed in pretrial confinement. These violations directly led to one of the aggravated assaults during which he choked and battered AH. Having given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial, we find his sentence is not inappropriately severe. *See Sauk*, 74 M.J. at 606.

### E. Additional Pretrial Confinement Credit

#### 1. Additional Background

The Defense filed a pretrial motion seeking relief for alleged illegal pretrial punishment in violation of Article 13, UCMJ, based in part on the conditions of Appellant's military pretrial confinement.[9] The Government opposed the

---

[9] The motion also alleged the termination of Appellant's pay upon the expiration of his term of service while in pretrial confinement violated Article 13, UCMJ; that issue is addressed separately above.

motion. At trial, the military judge received evidence and heard argument on the motion. The military judge's written ruling included findings of fact we find to be supported by the record, pertinent portions of which are summarized below.

In accordance with Air Force regulations, upon entering military pretrial confinement at Malmstrom AFB, Appellant was classified as a maximum custody detainee. Unlike post-trial detainees, pretrial detainees did not receive an initial individualized assessment or opportunity for periodic reassessment of their security classification; all pretrial detainees were placed in maximum custody status. Had Appellant received an individual assessment, he would have been categorized as a "medium in" confinee, the least restrictive classification available at the Malmstrom AFB confinement facility.

As a maximum custody confinee, Appellant faced greater restrictions than did medium custody confinees. Whenever he left the confinement facility, including to meet his defense counsel, attend court sessions, or go to the barbershop, he was required to be handcuffed, shackled, and accompanied by escorts and an armed guard. When Appellant received visitors at the confinement facility, he was required to be handcuffed and shackled and was permitted no physical contact; medium confinees were not so restrained and were permitted a brief hug or handshake with visitors. Appellant was required to eat his meals in his cell. Appellant was not permitted to leave his cell to use the facility's day room or outdoor courtyard because he was not allowed to mingle with the medium confinees held in the facility. As a result, Appellant spent essentially all day in his cell, unless required to leave for appointments, for hygiene needs, or to receive visitors. If Appellant had been able to use the day room and courtyard, unlike medium confinees he would have been shackled, handcuffed, and monitored by at least one guard.

The military judge found:

> [W]hile there is a readily obvious legitimate government rationale for *initially* placing a pre-trial confinee in maximum confinement status, the same cannot be said of arbitrarily requiring that all pretrial confinees must *perpetually* remain in maximum confinement status, regardless of their behavior or the duration of confinement, without even the possibility of having their status reassessed. It is strange, indeed, that a convict will enjoy the opportunity to be individually reassessed and to earn less restrictive conditions while a pre-trial confinee, who enjoys the presumption of innocence, is denied even the opportunity to be reassessed. Likewise, it is strange, indeed, that, in order to avoid the evils of co-mingling pre-trial confinees with convicts, the government should resolve the issue of things such as access to the

> dayroom by allowing convicts the privilege, while keeping the accused essentially locked up 24 hours a day.

(Emphasis added). The military judge found Appellant's confinement under maximum security conditions during the first 14 days of his military pretrial confinement was reasonably related to a legitimate government purpose. However, his continued maximum confinement in perpetuity without the opportunity for reassessment for the remaining 200 days was "purposeless, arbitrary, and not reasonably related to a legitimate government purpose." Accordingly, the military judge awarded Appellant an additional day-for-day credit against his sentence to confinement for each of those 200 days.

### 2. Law

Whether an Appellant is entitled to additional confinement credit for alleged violations of Article 13, UCMJ, is a mixed question of fact and law. *United States v. McCarthy*, 47 M.J. 162, 165 (C.A.A.F. 1997). We defer to a military judge's findings of fact unless they are clearly erroneous, whereas we consider de novo whether the facts entitle Appellant to additional credit against his sentence. *United States v. Williams*, 68 M.J. 252, 256 (C.A.A.F. 2010). "Article 13, UCMJ, prohibits two things: (1) the imposition of punishment prior to trial, and (2) conditions of arrest or pretrial confinement that are more rigorous than necessary to ensure the accused's presence for trial." *King*, 61 M.J. at 227. The first prohibition involves an intent or purpose to punish determined by examining the intent of confinement officials and the purposes of the restrictions or conditions in question. *Id.* (citations omitted). The second prohibition concerns conditions "sufficiently egregious [to] give rise to a permissive inference that an accused is being punished, or conditions . . . so excessive as to constitute punishment." *Id.* (citations omitted).

### 3. Analysis

Appellant personally asserts the 200 days of additional confinement credit awarded by the military judge was inadequate for the pretrial confinement conditions he endured. He refers us to "his trial defense counsel['s] argument regarding this issue as presented in his clemency submissions." However, although trial defense counsel's clemency submission sought relief for allegedly illegal *post-trial* confinement, he did not claim Appellant was entitled to additional relief for the conditions of his *pretrial* confinement. Nevertheless, we have evaluated Appellant's claim.

We do not agree Appellant is entitled to additional credit for illegal pretrial punishment. Although the military judge's ruling is not a model of clarity as to his specific rationale, his description of the pretrial confinement security classification policy as "purposeless, arbitrary, and not reasonably related to a legitimate government purpose" and his reference to *McCarthy* suggest he found

a "permissible inference of punishment." *See McCarthy*, 47 M.J. at 167 (citations omitted). Whether or not we agree, we find the military judge's award of 200 days of additional confinement credit was adequate to remedy any violation of Article 13, UCMJ. The military judge did not find a specific intent to punish Appellant. The Malmstrom AFB confinement personnel applied the existing Air Force policies regarding confinement and treated Appellant as they would have treated any other pretrial confinee under the circumstances—specifically, where medium security post-trial confinees were also present in the facility. There is no evidence Appellant's maximum security status negatively affected his health or opportunity to participate in his defense. The military judge simply found those regulations struck an unreasonable balance between the competing interests of pretrial and post-trial confinees, which prejudiced Appellant's interests in liberty and, to a certain extent, dignity. The award of 200 days of additional confinement credit was sufficient to redress that prejudice.

## F. Conditions of Post-Trial Confinement

### 1. Law

We review de novo whether an appellant has been subjected to impermissible conditions of post-trial confinement in violation of Article 55, UCMJ, 10 U.S.C. § 855, or the Eighth Amendment.[10] *United States v. Wise*, 64 M.J. 468, 473 (C.A.A.F. 2007). "'[A] prisoner must seek administrative relief prior to invoking judicial intervention' to redress concerns regarding post-trial confinement conditions." *Id.* at 471 (quoting *United States v. White*, 54 M.J. 469, 472 (C.A.A.F. 2001)). Absent some unusual or egregious circumstance, an appellant must demonstrate he has exhausted the prisoner grievance system and his right to petition his command for relief under Article 138, UCMJ. *Id.*

"Both the Eighth Amendment and Article 55, UCMJ, prohibit cruel and unusual punishment. In general, we apply the Supreme Court's interpretation of the Eighth Amendment to claims raised under Article 55, UCMJ, except where legislative intent to provide greater protections under Article 55 . . . is apparent." *Gay*, 74 M.J. at 740. To demonstrate a violation of the Eighth Amendment, an appellant must show:

> (1) an objectively, sufficiently serious act or omission resulting in the denial of necessities; (2) a culpable state of mind on the part of prison officials amounting to deliberate indifference to

---

[10] U.S. CONST. amend. VIII.

> [his] health and safety; and (3) that [he] has exhausted the pris-
> oner-grievance system . . . and that he has petitioned for relief
> under Article 138, UCMJ.

*United States v. Lovett*, 63 M.J. 211, 215 (C.A.A.F. 2006). Under our broad authority and mandate under Article 66(c), UCMJ, to approve only so much of the sentence as we find appropriate in law and fact, we may grant sentence relief due to an appellant's post-trial treatment even in the absence of an Eighth Amendment or Article 55, UCMJ, violation. *Gay*, 74 M.J. at 742–43; *see Tardif*, 57 M.J. at 223.

### 2. Analysis

Appellant argues he is entitled to additional confinement credit because he remained in maximum security confinement conditions for 17 days following the conclusion of his trial. Appellant provides no sworn declaration, affidavit, or other supplement to the record in support of this claim, but once again refers us to his trial defense counsel's clemency submission to the convening authority. Therein, trial defense counsel asserted Appellant remained in maximum confinement status from 10 May 2016 until 27 May 2016 due to an error by confinement authorities in classifying his confinement status. Trial defense counsel asserted that had the error not occurred, Appellant would have been classified as medium custody status. As a result, Appellant improperly endured 17 additional days of maximum custody under the restrictive conditions described above in relation to the issue of his pretrial confinement in the same facility. Therefore, trial defense counsel argued, Appellant should be awarded an additional 51 days of confinement credit.

Appellant's argument fails for multiple reasons. First, Appellant offers no evidence that he was in fact misclassified into post-trial maximum custody status. Trial defense counsel's bare assertions in the unsworn clemency memorandum do not carry the weight of evidence.

Second, in response to Appellant's assignment of error, the Government provided a sworn declaration dated 25 April 2018 from SSgt RM, the assistant noncommissioned officer in charge of the confinement facility. SSgt RM does not admit or deny there may have been an error with respect to the type of aggravated assault under Article 128, UCMJ, used to calculate Appellant's custody status. However, SSgt RM clarifies that, regardless of the asserted error, Appellant would have been classified as a maximum security confinee from 10 May 2016 until 27 May 2016 based on his 10-year term of confinement, his conviction for distributing marijuana, and a disciplinary offense while in confinement. Therefore, the asserted error, even if it were proven, was harmless with respect to Appellant's custody status. No evidence in the record contradicts SSgt RM's statement.

Third, even if we accepted *arguendo* that an error had resulted in Appellant's custody grade misclassification for 17 days, such an error does not approach the level of cruel or unusual punishment violative of Article 55, UCMJ, or the Eighth Amendment. There is no evidence Appellant was subjected to worse conditions than any other maximum confinee would have been, much less of "denial of necessities" or "deliberate indifference to [his] health and safety." *Lovett*, 63 M.J. at 215. Finally, given the lack of a factual foundation for Appellant's claim, we need not address whether relief even in the absence of an Eighth Amendment or Article 55, UCMJ, violation is appropriate. *See Gay*, 74 M.J. at 742–43; *Tardif*, 57 M.J. at 223.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court